IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEERLESS INSURANCE COPMANY and OHIO SECURITY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> MANOWN BUILDERS, CLINTON H. MANOWN & SONS, CLINTON H. MANOWN & MICHELLE MANOWN t/a CLINTON H. MANOWN & SONS and CLINTON H. MANOWN & MICHELLE MANOWN t/a CHM LAND COMPANY, <br><br> Defendants. | Civil Action No. 15-281 <br><br> United States Magistrate Judge <br> Cynthia Reed Eddy |

**MEMORANDUM OPINION**

**Cynthia Reed Eddy, United States Magistrate Judge**[1]

## I. INTRODUCTION

Plaintiffs Peerless Insurance Company ("Peerless") and Ohio Security Insurance Company ("Ohio Security") initiated this action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202 against the above-captioned Defendants, Manown Builders, et al. (collectively "Manown"). Manown is a named insured under commercial general liability insurance policies with Plaintiffs. Manown has been sued in the Court of Common Pleas of Fayette County, Pennsylvania ("State Court") by Bradley R. Scott and Rebecca J. Belski ("underlying plaintiffs") relating to Manown's allegedly deficient construction of the underlying plaintiffs' residence

---

[1] In accordance with 28 U.S.C. § 636(c)(1), all parties have voluntarily consented to have the undersigned conduct any all proceedings in this matter, including the entry of final judgment. ECF Nos. 11, 12. We have subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The parties are in agreement that Pennsylvania law governs this dispute.

("underlying action"). Plaintiffs have defended Manown in the underlying action under a reservation of rights, and subsequently initiated this action herein seeking a declaration from the Court that no coverage exists in the underlying action under the applicable insurance policies, and that Plaintiffs do not have a duty to defend or indemnify Manown in the underlying action.

Currently pending before the Court are cross-motions for summary judgment. (ECF Nos. 23, 25). The Court has carefully reviewed and considered the parties' cogent arguments made in connection with these pending motions. (ECF Nos. 24—31). For the reasons that follow, Plaintiffs' motion for summary judgment will be granted and Defendants' motion for summary judgment will be denied.

## II. LEGAL STANDARDS

### A. Summary Judgment – Rule 56

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). In this regard, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those

portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323–24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. Cty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322–23; Jakimas v. Hoffman–La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

This standard does not change merely because there are cross-motions for summary judgment. Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment." Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968). When considering cross-motions for summary judgment, a court is precluded from granting summary judgment to either side—even if the parties stipulate that no more evidence is needed—when there are any genuine issues of material fact. Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1024 (3d Cir. 2008). In resolving such cross-motions, "the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion." Stilp v. Contino, 743 F.Supp.2d 460, 465 (M.D.Pa. 2010) (citations omitted).

B.      **Interpretation of Insurance Policies**

"The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy." Meyer v. CUNA Mut. Ins. Soc., 648 F.3d 154, 163 (3d Cir. 2011) (citing Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). Insurance policies are generally to be interpreted by a court, not a jury. Madison, 695 A.2d at 106. "A policy must be read as a whole and its meaning construed according to its plain language." Meyer, 648 F.3d at 163 (citations omitted).

The insurance company, as the author of the policy, bears the burden of drafting with precision; and thus, any ambiguous term must be construed in favor of the insured. Id. When a provision of the policy is clear and unambiguous, the court must give effect to that language. Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007). "Contractual terms are ambiguous 'if they are subject to more than one reasonable interpretation when applied to a particular set of facts.'" Liberty Mut. Ins. Co. v. Sweeney, 689 F.3d 288, 293 (3d Cir. 2012) (quoting *Madison*, 735 A.2d at 106). A court "will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." Madison, 735 A.2d at 106 (citing Steuart v. McChesney, 444 A.2d 659, 663 (Pa. 1982)).

C.      **Duty to Defend and Duty to Indemnify**

"Although the duty to defend is separate from and broader than the duty to indemnify, both duties flow from a determination that the complaint triggers coverage." Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). The Pennsylvania Supreme Court has observed the following:

> [a]n insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings.... In determining the duty

> to defend, the complaint claiming damages must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be required to pay resulting judgment.... [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.

Baumhammers, 938 A.2d at 290 (quoting Gene's Rest. Inc. v. Nationwide Ins. Co., 548 A.2d 246, 247 (Pa. 1988)) (alterations in original).

It is "well-established precedent" in Pennsylvania "that an insurer's duty to defend and indemnify [are] determined solely from the language of the complaint against the insured." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). Moreover, "[t]he particular cause of action that a complaint pleads is not determinative of whether coverage has been triggered." Mut. Benefit Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999). "Instead it is necessary to look at the factual allegations contained in the complaint." Id. (citations omitted); see also Kvaerner, 908 A.2d at 896 (finding that the lower court erred in looking beyond the factual averments made in the underlying complaint when assessing whether the insurer owed a duty to defend).

### III. BACKGROUND[2]

#### A. Manown's Insurance Policies with Peerless and Ohio Security

Manown is a named insured under two policies with Defendants: (1) an Ohio Security commercial general liability policy[3] for the periods of March 19, 2007 through March 19, 2008 and March 19, 2008 through March 19, 2009; and (2) a Peerless commercial general liability policy[4] for the policy periods of March 19, 2009 through March 19, 2010, March 19, 2010

---

[2] All of the facts herein are undisputed. See Joint Statement of Undisputed Facts, ECF No. 22.

[3] Policy No. HBS 53517910.

[4] Policy No. CBP 8611827.

through March 19, 2011, and March 19, 2011 through March 19, 2012. Aside from the coverage periods, the substantive language in both of these policies is identical in all relevant respects. As such, for ease of reference, when discussing the language contained in said policies, the Court will collectively refer to both policies hereafter as "the policy." The Court will set forth the relevant policy language in the foregoing Discussion section.

### B. Underlying Action

On August 18, 2011, the underlying plaintiffs initiated a civil action against Manown and K-2 Engineering, Inc. (which is not a party herein) in State Court by filing a Writ of Summons.[5] About a year and a half later, on February 11, 2013, the underlying plaintiffs filed their complaint. The underlying plaintiff's complaint states that they entered into a contract with Manown on June 29, 2007 for the construction of a residence in Uniontown, Pennsylvania. The consideration for that contract was originally $600,000 but was later amended to $700,000 via an undated but signed document. Specifications for the construction of the home were reached on July 6, 2007 in a Home Building Specification and Contract.

The underlying plaintiffs employed K-2 Engineering for the preparation, design and presentment of architectural/engineering specifications/plans for the construction and erection of the house on June 1, 2007 for the subject residential dwelling. Manown subsequently began construction of the residence in accordance with the plans provided by K-2 Engineering. Construction of the residence was completed sometime in February 2009.

The underlying plaintiffs alleged that, prior to moving into the house, they noted that the floors were uneven and deflected. They further alleged that after moving into the house, they noticed wall and ceiling cracks and doorways that were not flush. Their complaint contains the

---

[5] No. 1851 of 2011, G.D.

following counts: "Negligent Performance of Contract" against Manown; "Professional Negligence/Malpractice" against K-2 Engineering; and "Joint and Several Liability" against both Manown and K-2 Engineering. The underlying plaintiffs alleged that Manown was liable for breaching the construction contract, based upon Manown's alleged failure to properly construct or erect the residence in several ways.[6]

After the underlying plaintiffs initiated the underlying action, Manown tendered defense of the complaint to Peerless, and Peerless agreed to defend Manown, subject to a reservation of rights dated November 11, 2011. Plaintiffs, on behalf of Manown, then moved for judgment on the pleadings in the underlying action, arguing that the underlying plaintiffs' claims against Manown were governed by the two-year statute of limitations applicable to negligence claims, and that the underlying action should therefore be dismissed because it was initiated after that time period expired. However, the State Court denied that motion, concluding that the claims asserted therein sounded in contract, not negligence, and thus a four-year statute of limitations period was applicable.

A few months after the State Court's decision, Ohio Security sent Manown a supplemental reservation of rights letter dated February 19, 2015. This letter stated that the claim fell within the policy period of Ohio Security policy, not the Peerless policy, and reserved the rights of Peerless and Ohio Security to decline coverage under the subject policies. About a week later, on February 27, 2015, Peerless and Ohio Security initiated the instant declaratory judgment action.

---

[6] Specific examples listed in the underlying plaintiff's complaint include failure to (1) construct and erect pillars under the main support beam in the kitchen; (2) correctly install the floors throughout; (3) properly use materials in construction of the structure and installation of the floors; (4) use ordinary skill customary in construction/erection; (5) follow specifications; (6) follow uniform building codes; (7) construct, erect and install ceilings; and (8) construct/erect the dwelling in a safe, proper and legal manner.

## IV. DISCUSSION

The policy states that Plaintiffs will defend Manown and "pay those sums that [Manown] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies," but that Plaintiffs will have no duty to defend Manown in "any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." The policy further states that "[t]his insurance applies to 'bodily injury and 'property damage' **only if** … [t]he 'bodily injury' or 'property damage' is **caused by an 'occurrence'** that takes place in the 'coverage territory.'" (emphasis added). The policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In *Kvaerner*, the Supreme Court of Pennsylvania interpreted an insurance policy which contained nearly identical language with respect to the definition of "occurrence" that is at issue here. In that case, a coke battery builder insured under a commercial liability contract was sued in an underlying action for failing to properly construct a coke battery in accordance with applicable specifications, warranties, and industry standards. Kvaerner, 908 A.2d at 900. Like the policy here, the policies in *Kvaerner* "only permitted coverage for allegations of 'property damage' caused by an 'occurrence,' which was defined by the policies" as "an accident, including continuous or repeated exposure to substantially the same or general harmful conditions." 908 A.2d at 892, 897. The Court construed the underlying plaintiff's claims for breach of contract and breach of warranty as a claim for "faulty workmanship" and held "that the definition of 'accident' required to establish an 'occurrence' under the policies cannot be satisfied by claims based upon faulty workmanship." Id. at 898. According to *Kvaerner*, "[s]uch claims simply do not present the degree of fortuity contemplated by the ordinary definition of

'accident' or its common judicial construction in this context." Id. "To hold otherwise," the Court elaborated, "would be to convert a policy for insurance into a performance bond," which the Court was "unwilling to do…, especially since such protections are already readily available for the protection of contractors." Id. (footnote omitted).

Shortly after *Kvaerner* was decided, the Superior Court of Pennsylvania interpreted *Kvaerner* in *Millers Capital Ins. Co. v. Gambone Bros. Development Co., Inc.*, 941 A.2d 706, 713 (Pa. Super. 2007) ("Gambone") in a dispute involving a suit against a housing developer that was insured under a similar "occurrence based" commercial general liability policy. In *Gambone*, the underlying action was based on faulty workmanship of the insured and/or its subcontractors and alleged that the homes were built with defective stucco exteriors, windows, and other artificial seals, which resulted in severe water damage to the home interiors. Gambone, 941 A.2d at 713. The Court interpreted *Kvaerner* to stand for the proposition that "natural and foreseeable acts … which tend to exacerbate the damage, effect, or consequences caused *ab initio* by faulty workmanship also cannot be considered sufficiently fortuitous to constitute an 'occurrence' or 'accident' for the purposes of an occurrence based CGL policy." Id. The Superior Court of Pennsylvania later described the panel's decision in *Gambone* as one that "focused on the allegations of faulty workmanship in what they had characterized as the product itself, the home." See Indalex Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 83 A.3d 418, 423 (Pa. Super. 2013); accord Hagel v. Falcone, 2014 WL 8331846 (Pa. Super. 2014) (non-precedential) (comprehensively analyzing *Kvaerner* and its progeny).

Moreover, in a recent non-precedential decision from the Superior Court of Pennsylvania, the Court held that the insured's deficient construction of the underlying plaintiff's residence—which included cracking in the drywall, doors not closing properly, and uneven

flooring—was not covered under an occurrence based policy which contained the same exact definition of "occurrence" in this case. See Erie Ins. Exchange v. Consta Const., LLC, 2015 WL 7111102, *1, 3 (Pa. Super. 2015). Applying the pricinples set forth in *Kvaerner*, the Court in *Consta* reached this conclusion because the underlying plaintiffs' claims "unambiguously attribute[d] the defects to [the insured's] non-workmanlike construction as well as the failure to construct the home in light of and with consideration to the particular characteristics of the lot on which the residence was constructed." Id. at *5.

In this case, it is undisputed that the claims in the underlying action "are based upon Manown's alleged failure to properly construct and/or erect the resident dwelling," including failing to properly construct, erect, and/or install pillars, floors, and ceilings. (Joint Statement of Undisputed Facts, ECF No. 22 at ¶¶ 11, 12). The underlying plaintiffs' complaint further alleges that Manown failed to use appropriate materials, follow specifications, and follow uniform building codes when constructing of the home. (Id.). The underlying plaintiffs' claims against Manown are therefore unequivocally based upon faulty workmanship of the home itself. As such, *Kvaerner* and its progeny dictate that an "occurrence," as defined in the policy, has not been alleged in the four-corners of the underlying complaint because faulty workmanship in the construction of a home is not, as a matter of law, an "accident." See Gambone, 941 A.2d at 713; Consta, 2015 WL 7111102, at *5. Under Pennsylvania law, the underlying plaintiffs' claims against Manown "simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." Kvaerner, 908 A.2d at 898.[7] As a result, no coverage under the policy exists for Manown. Ohio Security and

---

[7] The Court notes that in one of Manown's memoranda, Manown asserts that *Kvaerner* is a flawed decision which failed to apply the standard that it articulated and inaccurately declared that it was joining the majority of jurisdictions in issuing its holding. See (ECF No. 26 at 2-4). Manown also asserts that the reasoning employed by *Kvaerner* in reaching its holding has since been the subject to criticism by

Peerless do not have a duty to defend or indemnify Manown, and they may withdraw their defense of Manown in the underlying action.[8]

## V. CONCLUSION

In accordance with the foregoing, Plaintiffs' motion for summary judgment is granted and Manown's motion for summary judgment is denied. An appropriate Order follows.

Dated: June 30, 2016.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF.

---

appellate courts in various other jurisdictions, including the United States Court of Appeals for the Tenth Circuit, West Virginia, Connecticut, Indiana, Florida, and Texas. Id. However, even assuming *arguendo* that Manown's argument here is true, it changes nothing. Indeed, the parties agree, and this Court concurs, that the law of Pennsylvania is controlling in the resolution of this dispute. See Meyer, 648 F.3d at 162 ("Under Pennsylvania law, an insurance contract is governed by the law in which he contract was made."). As a result, it is irrelevant if *Kvaerner's* holding is not, in fact, aligned with the majority of jurisdictions to have considered such issues. Furthermore, the fact that the reasoning used by *Kvaerner* may have faced criticism from appellate courts in other non-binding jurisdictions is equally irrelevant. What matters is that *Kvaerner* is binding in Pennsylvania and that its holding, as well as the other subsequent decisions from the Superior Court of Pennsylvania applying *Kvaerner*, preclude a finding that there is coverage in this case.

[8] Because no coverage exists under the policy in light of the fact that the definition of "occurrence" has not been implicated, we do not need to consider the parties' other arguments on the issue of whether any exclusions and/or exceptions to the exclusions are applicable herein. See Kvaerner, 908 A.2d at 900 ("Given this conclusion, it is not necessary for us to consider whether the business risk/work product exclusions also preclude coverage here.").

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEERLESS INSURANCE COPMANY and OHIO SECURITY INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> MANOWN BUILDERS, CLINTON H. MANOWN & SONS, CLINTON H. MANOWN & MICHELLE MANOWN t/a CLINTON H. MANOWN & SONS and CLINTON H. MANOWN & MICHELLE MANOWN t/a CHM LAND COMPANY, <br><br> Defendants. | Civil Action No. 15-281 <br><br> United States Magistrate Judge <br> Cynthia Reed Eddy |

## ORDER

**AND NOW**, this 30th day of June, 2016, upon consideration of the arguments made in connection with the pending cross-motions for summary judgment, and in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED** as follows:

1. The Motion for Summary Judgment filed by Plaintiffs Peerless Insurance Company and Ohio Security Insurance Company (ECF No.25) is **GRANTED**. There is no coverage available to Defendants under the Ohio Security commercial general liability insurance policy, Policy No. HBS 53517910 (effective March 19, 2007 – 2008 and March 19, 2008 – 2009), and the Peerless commercial general liability policy, Policy No. CBP 8611827 (effective March 19, 2009 – 2010, March 19, 2010 – 2011, and March 19, 2011 – 2012). Peerless and Ohio Security have no ongoing duty to defend or indemnify any of the above-captioned Defendants in the Underlying Action in the Court of Common Pleas of Fayette County, Pennsylvania. Peerless and Ohio Security may withdraw and

12

discontinue providing a defense to Defendants in said Underlying Action.

2. The Motion for Summary Judgment filed by Defendants Manown Builders, Clinton H. Manown & Sons, Clinton H. Manown & Michelle Manown t/a Clinton H. Manown & Sons and Clinton H. Manown & Michelle Manown t/a CHM Land Company (ECF No. 23) is **DENIED**.

3. The Clerk of Court shall mark this **CASE CLOSED**.

By the Court:

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all registered counsel via CM-ECF